REMOTE SERVICES, INC., Convenient Industries of America, Expediency, Inc., Terry K. Smith and Expediency, Inc. d/b/a Convenient Food Mart # 152, Appellants,

v.

FDR CORPORATION, d/b/a Keystop, Appellee.

No. 88–SC–000147–D.

Supreme Court of Kentucky.

Jan. 19, 1989.

Thomas G. Mooney, Ewen, MacKenzie, & Peden, P.S.C., Louisville, for appellants.

B. Hume Morris, Sally H. Lambert, Robert W. Keats, Ray & Morris, Louisville, for appellee.

STEPHENS, Chief Justice.

On this appeal we decide the constitutionality of one of Kentucky's so-called Unfair Trade Practices Acts, KRS 365.030.

On June 25, 1986, appellee filed a complaint in the Jefferson Circuit Court alleging that appellants had violated the provisions of KRS 365.030 by selling gasoline and gasoline products at less than cost for the purpose of injuring competitors and destroying competition. Appellants answered, claiming among other things, that the statute was in violation of Section 2 of the Kentucky Constitution, Appellants filed a motion for summary judgment to which appellee did not respond. The trial court entered the requested judgment. Thereafter, the trial court withdrew the judgment, and permitted appellee to respond to the motion. Following a response, the trial court reinstated the summary judgment.

The basis of the trial court's decision was that the statute violated Section 2 of the Kentucky Constitution, as well as the Sherman Anti–Trust Act[1] and the Commerce Clause of the United States Constitution.[2]

On appeal, the Kentucky Court of Appeals, in a 2–1 decision, reversed the trial court. The majority declared that KRS 365.030 is not a minimum mark-up law, and is not a method of "retail price maintenance." It categorized the statute as a "trade-practice measure." The majority further stated that the legislative purpose recognized that

"... the monopolistic potential of price undercutting is, in the long run, more hostile to public interest than is the value of temporarily low prices. The benefits to be gained from transiently low prices are so Lilliputian as to be grossly outweighed by the potential for an economic leviathan to destroy all competition and thus to consume the consuming public."

Slip op. at 3.

The Court of Appeals distinguished the case of *Kentucky Milk Marketing v. Kro-ger Company*, Ky., 691 S.W.2d 893 (1985), by identifying the offending statute therein as a minimum retail mark-up law, as opposed to the statute *sub judice*, which, as stated, it described as a permissible "trade-practice measure."

We disagree, and reverse the Court of Appeals. The pertinent sections of the challenged statute are as follows:

365.030. Sale at less than cost or gift of commodity to destroy competition prohibited. (1) Except as provided in KRS 365.040, *no person engaged in business within this state shall sell, offer for sale or advertise for sale any article or product, or service or output of a service trade, at less than the cost thereof to such vendor,* or give, offer to give or advertise the intent to give away any article or product, or service or output of a service trade, *for the purpose of injuring competitors and destroying competition.*

. . . .

(3) As applied to production, "cost" includes the cost of raw materials, labor and all overhead expenses of the producer. *As applied to distribution, 'cost' means the invoice or replacement cost, whichever is lower, of the article or product to the distributor and vendor plus the cost of doing business by the distributor and vendor. The "cost of doing business" or "overhead expense" means all costs of doing business incurred in the conduct of the business and must include without limitation the following items of expense: Labor (including salaries of executives and officers), rent, interest on borrowed capital, depreciation, selling cost, maintenance of equipment, delivery cost, credit losses, all types of licenses, taxes, insurance and avertising.* "Vendor" includes any person who performs work upon, renovates, alters or improves any personal property belonging to another person. (Emphasis added).

1. 15 U.S.C. §§ 1 et seq.

2. U.S. Const. Art. I, § 8.

By the simple and unequivocal wording of this statute, the General Assembly has proscribed, as being an unfair trade practice, the selling of a product, a service, or the output of a service trade at a price which is less than cost for the purpose of injuring competitors or destroying competition. The General Assembly has defined "cost" as applied to distribution, as "the invoice or replacement cost, whichever is lower, of the article or product to the distributor and vendor plus the cost of doing business by the distributor and vendor."[3] Further the statute defines "cost of doing business" as expenses incurred for labor (including executive salaries), rent, interest, depreciation, selling cost, maintenance of equipment, delivery cost, etc. In a word, *cost* means all those items of actual expense which must be recovered before a profit can be realized.

Appellants, as defendants in the trial court, were accused by the appellee, as plaintiff, of violating the statute by selling below cost for the purpose of injuring plaintiff, a competitor. As this case was decided by summary judgment, we must, perforce, take all allegations thereof as being true. Moreover, appellants have conceded they were violating the statute for the purpose of injuring competitors.

The Court of Appeals upheld KRS 365.-030 as maintaining a competitive sales environment. Analyzing the legislative policy of the General Assembly in enacting the statute, it concluded, in a quantum leap of logic and with a considerable amount of fact finding on its own, that temporary price cutting would lead to monopolies which would "consume the consuming public." There is no basis for such a conclusion in the record before us and no such conclusion can be justified by the wording of the statute. That statement, at best, represents a subjective view of the majority, and does not comport with either the facts or viable economic theory.

The statute presently in question is strikingly similar to that in the *Milk Marketing* case, *supra*, which we declared to be a minimum mark-up law and in violation of Section 2 of the Kentucky Constitution. For the reasons which follow we believe that case and the rationale for the decision therein is dispositive of the issue before us.

In *Milk Marketing*, we decided the constitutionality of KRS 260.675 et seq. The purpose of that statute was to prevent any practices that would tend to eliminate competition or tend to create a monopoly. One proscribed practice set out in that statute was the sale of milk products "below cost." The statute carefully defined "below cost;" cost was said to include the invoice price of milk, plus the cost of doing business, including labor, salaries, rent, interest, depreciation, power, supplies, maintenance, selling costs, transportation, delivery costs, lease, taxes, etc. It was the definition of "cost," which was not confined to cost of the product, but included other legitimate competitive advantage, that abrogated the constitutionality of the statute.

The prohibition of selling below cost and the definition of cost is nearly identical in KRS 260.675 et seq., and in KRS 365.-030(1), (3). The statutes are a virtual image of each other. They both prohibit sales below cost for anti-competitive purposes; and they both require adherence to essentially the same cost determination formula. Therefore, they must withstand the same constitutional muster.

In *Milk Marketing*, as noted, we declared the statute to be a minimum mark-up law. Since the statutes are so similar, we must, *a fortiori* conclude that KRS 365.030 is also a minimum mark-up law. It clearly is. We further declared the statutes at issue in *Milk Marketing* violated Section 2 of the Kentucky Constitution. We held that they were *facially* unconstitutional and were unconstitutional in their enforcement. *Id.*, at 899.

We believe the reasoning in *Milk Marketing* is clearly applicable to this case. Section 2 of the Kentucky Constitution is that part of our constitution which guarantees due process of law to our citizens and extends equal protection of the law to all

---

**3.** Use of the lower of invoice or replacement cost is subject to the provisions of subsection (2), which prohibits using an artificially low invoice cost except under specified conditions.

its citizens, corporate or otherwise. It protects "free men" from absolute and arbitrary power over their "lives, liberty and property." As we said in *Milk Marketing,* when testing a minimum mark-up law by the provisions of Section 2,

> "[t]his certainly by any criteria, is arbitrary and is inimical to the public interest. It is an invasion of the right of merchants to sell competitively, and of the public to buy competitively in the open market." *Id.,* at p. 900.

We therefore conclude that since KRS 365.030 is a minimum mark-up law, it is facially unconstitutional as being violative of Section 2 of the Kentucky Constitution.

The decision of the Court of Appeals is reversed, and the judgment of the trial court is affirmed.

COMBS, LEIBSON and WINTERSHEIMER, JJ., concur.

VANCE, J., dissents in a separate dissenting opinion in which GANT and LAMBERT, JJ., join.

VANCE, Justice, dissenting.

Respectfully, I dissent. The majority condemns K.R.S. 365.030 on the basis that it is not a "trade-practice regulation" but is in fact a "minimum mark-up" law.

This case was decided on a summary judgment and therefore all of the allegations of the complaint must be taken as true. The appellee alleged that appellants were selling their product below cost as defined by statute and further alleged that such sales below cost were for the purpose of destroying competition. Appellants have, in fact, conceded they were violating the statute for the purpose of injuring competitors.

I concede that the statute is unconstitutional if it is, in fact, a minimum mark-up statute. I am astounded that the majority can find anything about the statute which requires any mark-up whatever above cost. The majority opinion does not specify in any particular where a mark-up of any kind occurs by reason of the statute.

As I read the statute it would permit the appellants to sell their product at exactly cost. It does not require them to make profit to comply with the law. What it does require is that appellants do not sell their product at a price below their cost for the purpose of destroying competition by the appellee. This is exactly what the appellants admit they have been doing.

I believe the Court of Appeals was exactly right when it noted that "the monopolistic potential of price undercutting is, in the long run, more hostile to the public interest than is the value of temporarily low prices. The benefits to be gained from transiently low prices are so Lilliputian as to be grossly outweighed by the potential for an economic leviathan to destroy all competition and thus to consume the consuming public."

The statute in question does not prohibit all sales below cost, but only those below cost sales *which are made for the pupose of injuring competitors and destroying competition.* Thus, sales in good faith in liquidating a business, sales where the goods have been damaged, sales made under a court order, or sales to meet in good faith the price of a competitor may be made below cost because such sales are not for the purpose of destroying competition.

In this country we have long recognized a legitimate state interest in regulating monopolistic practices. Thus, utilities, which are essentially monopolies, are regulated by the Public Service Commission to protect consumers. For competitive enterprises a statute such as K.R.S. 365.030 is an anti-monopoly statute, pure and simple, and it is well within the recognized police power of the state. It prevents a rich and powerful competitor from reducing its price below cost until it squeezes its competitor out of the market, after which, because it no longer has any competition, it can raise its prices as unreasonably high as it pleases.

This case was decided by summary judgment, and there is no evidence in the record, as yet, to show the extent that appellants were selling below their cost, but their admission that they were violat-

ing the statute with an intent to injure their competitors is, in itself, an admission of a cannibalistic practice designed to monopolize the market to some extent at least. Even though the procedure in this case has prevented the taking of evidence, as judges we are not required to blind ourselves to the history of monopoly in this country, and its dire consequences. The lessons learned from the robber barons of a past age are still there to see. The ability of a national dairy or bakery or oil company to sustain itself from the profits of a thousand subsidiaries across the country, while deliberately absorbing a substantial loss from below cash sales in one locality for the purpose of eliminating a local competitor in that locality is plain to see. The purpose of statutes prohibiting below cost sales is to prevent such monopolistic practices. The statute in question does not require or guarantee a mark-up, it simply prohibits sales below cost for the purpose of eliminating competition.

The majority places great reliance upon the similarity of the statute in question here to the statute which was held unconstitutional in *Kentucky Milk Marketing v. Kroger Co.*, Ky., 691 S.W.2d 893 (1985). In that case, however, there was a trial on the merits and evidence which showed that the statute as applied by the milk marketing commission resulted in a mark-up or profit. There is no marketing commission to regulate the enforcement of the statute in question, and there is no evidence in the record which shows that any mark-up results from compliance with the statute.

I would reverse the summary judgment and remand to the trial court for further proceedings.

GANT and LAMBERT, JJ., join in this dissenting opinion.